# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **LARRY JOSEPH CARRION,** | } |
| Plaintiff, | } |
| v. | } Case No.: 2:11-CV-2760-RDP |
| **MICHAEL J. ASTRUE,** **COMMISSIONER OF** **SOCIAL SECURITY,** | } |
| Defendant. | } |

## MEMORANDUM OF DECISION

Plaintiff Larry Joseph Carrion brings this action pursuant to Title XVI of Section 1631(c)(3) of the Social Security Act (the "Act"), seeking review of the decision by the Commissioner of the Social Security Administration ("Commissioner") denying his claim for Supplemental Security Income benefits ("SSI"). *See also*, 42 U.S.C. § 1383(c)(3). Based upon the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

**I.      Proceedings Below**

Plaintiff filed his application for SSI on February 13, 2009, alleging disability beginning June 1, 1994, which was later changed to February 13, 2009. (R. 94, 168). Plaintiff's application was denied on June 24, 2009, and on July 10, 2009, he filed a written request for a hearing. (R. 131-37). A hearing was held on February 11, 2010 before Administrative Law Judge Michael L. Brownfield ("ALJ") with testimony garnered from both Plaintiff and Dr. Julie A. Russell, a vocational expert.

(R. 91-119).[1] In his decision, dated June 24, 2010, the ALJ determined that Plaintiff had not been under a disability within the meaning of § 1614(a)(3)(A) of the Act from February 13, 2009 through June 24, 2010, the date of his decision. (R. 14-22). After the Appeals Council denied Plaintiff's request for review of the ALJ's decision, that decision because the Commissioner's final decision, and thereafter a proper subject of this court's review. (R. 1).

Plaintiff was forty-nine years old on the date of the hearing and had finished some special education schooling[2], and worked in the past as a front end loader operator and laborer in various industries. (R. 99, 113, 153, 293). He was incarcerated from 1994-2004 for drug trafficking and reports a history of physical and sexual abuse from his childhood. (R. 99, 250, 286). Plaintiff alleged disability due to bipolar disorder ("bipolar") and post-traumatic stress disorder ("PTSD"). (R. 168). During the hearing, he also complained of back and neck problems. (R. 103).

Plaintiff has medical records from many treating and examining sources during and before his alleged period of disability. (R. 228-45, 247-84, 286-96, 298-308, 311-13, 315-16, 318-22, 355-56, 358-71, 376-97, 402-04). His prison medical records were no longer available.[3] (R. 399). Plaintiff complained of neck and back pain and received an MRI from Quality of Life Health Services in April 2008, which revealed multilevel degenerative change in the lumbar spine and a right paracentral protrusion at C5-6. (R. 232-35, 244-45). He was followed by the UAB Pain Clinic. (R. 102, 250). His next visit to Quality of Life was for abdominal pain on May 9, 2008. (R. 236-37).

---

[1]An initial hearing was held on December 11, 2009. Because Plaintiff's previous attorney had withdrawn prior to this first hearing, Plaintiff was advised of his rights and subsequently requested time to find an attorney. (R. 120-29).

[2]During the hearing, Plaintiff was unclear whether he completed "the sixth or the seventh" grade. (R. 99). Medical records indicate Plaintiff attended school until the third grade. (R. 293).

[3]Plaintiff indicated he was diagnosed as bipolar while incarcerated. (R. 292).

In July 2008, Plaintiff was admitted to Sentara Leigh Hospital in Norfolk, Virginia, with abdominal pain as his primary complaint. (R. 376-97).

Plaintiff was admitted to Trinity Medical Center in Birmingham, Alabama, in December 2008 with a chief complaint of chest pain, blackouts, and was feverish. (R. 250-51, 261-65). He was subsequently admitted to the psychiatric center due to suicidal ideation. (*Id*.). A multiaxial assessment was taken and Plaintiff was found to have bipolar disorder, PTSD, and a Global Assessment of Functioning ("GAF") score of 30.[4] (R. 251). On January 16, 2009, Plaintiff underwent an intake evaluation at Eastside Mental Health Center and was rated with a GAF score of 50. (R. 292-96, 296). Plaintiff's initial treatment plan from Eastside Mental Health, dated March 24, 2009, also listed a GAF score of 50. (R 286).

On March 28, 2009, Plaintiff was taken to the ER at Citizens Baptist Medical Center. He was admitted and examined for seizure-like activity. (R. 298-307). He was again assessed as having bipolar disorder, and it was noted that his medicines were to be altered to prevent seizure activity. (R. 301, 304-05). Plaintiff was discharged on March 30, 2009. (R. 298). Plaintiff underwent a consultative psychological evaluation on June 17, 2009. Plaintiff was found to have given a fair but seemingly deliberately slow effort. (R. 318-22). An assessment and treatment plan by a physician at Cheaha Mental Health dated January 19, 2010, found Plaintiff to be bipolar with PTSD, with a GAF score of 50. (R. 404).

---

[4]*See* American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders*, 27-34 (4th ed. 2000, Text Rev.( DSM-IV-TR) (describing the GAF scale used in Axis V of a diagnostic multiaxial evaluation and the multiaxial assessment).

3

**II.     ALJ Decision**

For a claimant to be determined disabled as defined under the Act, the claimant must have "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months," and which "makes you unable to do your past relevant work . . . or any other substantial gainful work that exists in the national economy." 20 C.F.R. § 416.905(a). A physical or mental impairment is defined as an impairment that "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 416.908.

Social Security regulations provide a five-step sequential evaluation process for determining whether an individual is disabled. 20 C.F.R. § 416.920(a). First, the ALJ must determine if the claimant is engaging in substantial gainful activity; if so, a finding of non-disability is made and the inquiry ends. 20 C.F.R. § 416.920(b). Substantial gainful activity is work involving significant physical or mental duties, and is done or intended for pay or profit. 20 C.F.R. §§ 416.972(a)-(b). If it is determined that the claimant is not engaged in substantial gainful activity, the evaluation proceeds.

In the second step, the ALJ must determine whether the claimant has a medically determinable impairment that is severe or a combination of impairments that is severe. 20 C.F.R. § 416.920(c). Severe is defined under Social Security regulations as requiring that the individual have a medically determinable impairment, or combination of impairments, that is not merely a slight abnormality that would have no more than a minimal effect on an individual's ability to work; that is, it significantly limits an individual's ability to do basic work activities. *Id*.; *see also* 20 C.F.R. §

4

416.921; Social Security Ruling ("SSR") 85-28.[5] If the claimant does not suffer from a severe impairment or combination of impairments, then the inquiry ends.

Third, the ALJ considers the medical severity of the claimant's impairment or combination of impairments and compares them to the listing of impairments. 20 C.F.R. § 416.920(d). If the claimant's impairment or combination of impairments meets or medically equals the criteria of a listing, the claimant may be declared disabled. *Id.* Otherwise, the inquiry proceeds.

Step four requires the ALJ to determine the claimant's residual functional capacity ("RFC") based on the claimant's relevant medical and other evidence of record, and then to assess whether the claimant can do past relevant work based on the RFC. 20 C.F.R. § 416.920(e). All impairments, including non-severe impairments, are also considered in finding the RFC. *Id.*; *see also* C.F.R. § 416.945; SSR 96-8p.[6] If the claimant can do past relevant work, then a finding of not disabled is made. 20 C.F.R. § 416.920(f). However, if the claimant cannot do past relevant work, then the Commissioner must show, at step five, that there is other work in the national economy the claimant can perform based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 416.920(g). If the claimant can do no other work, then he or she is disabled; if a finding to the contrary is made, the claimant will be found not disabled. *Id.*

In the instant case, the ALJ found that steps one and two were satisfied in that Plaintiff has not engaged in substantial gainful activity since February 13, 2009. The ALJ further determined that Plaintiff has multiple severe impairments of: bipolar disorder; post traumatic stress disorder; personality disorder; possible borderline intelligence; and degenerative disc disease of the neck and

---

[5]*See* http://www.ssa.gov/OP_Home/rulings/di/01/SSR85-28-di-01.html.

[6]*See* http://www.ssa.gov/OP_Home/rulings/di/01/SSR96-08-di-01.html.

back. (R. 16). However, the ALJ found that none of Plaintiff's impairments, alone or in combination, met or medically equaled a listing. (R. 16-18). Therefore, the ALJ found that step three was not satisfied, and specifically found that Plaintiff's mental impairments created no more than moderate difficulties, if even that high of a level existed. (*Id.*).

The ALJ determined Plaintiff's RFC and specifically found him "limited to non-complex job tasks in which contact with the general public is brief, infrequent, and casual," and he is "precluded from jobs requiring the satisfaction of production quotas." (R. 18). Plaintiff's symptoms and objective medical evidence were all considered by the ALJ in his finding. (*Id.*). However, the ALJ found evidence of misrepresentation and lack of credibility as to Plaintiff's claims of back and neck symptoms and "mental allegations." (R. 19-20). The ALJ concluded that the RFC "is supported by the record as a whole, and the record does not contain any opinions from treating physicians indicating that [Plaintiff] is disabled or has limitations greater than those" in the decision. (R. 21).

The ALJ next addressed step four by applying Plaintiff's RFC and determining that Plaintiff is unable to perform any past relevant work. (*Id.*). In turn, step five was satisfied when the ALJ found that jobs exist in the national economy that Plaintiff is able to perform given his age, education, work experience and RFC. (R. 21-22). The ALJ relied on the vocational expert's testimony to conclude that three specific type of jobs are available in Alabama that Plaintiff would be able to perform, and made a finding of not disabled. (R. 22).

## III.    Plaintiff's Argument for Reversal

Plaintiff contends that substantial evidence does not support the ALJ's decision and makes two arguments in support of that assertion. The first argument is that the ALJ erroneously assessed that Plaintiff's emotional problems impose nothing more than a moderate restriction of functioning. (Pl.'s Mem. 4, 10-11). Plaintiff's second argument is that the ALJ improperly applied the pain

standard by not incorporating any level of pain in his assessment of residual functional capacity. (Pl.'s Mem. 11).

IV.     **Standard of Review**

Judicial review of disability claims under the Act is limited to whether the Commissioner's decision is supported by substantial evidence or whether the correct legal standards were applied. 42 U.S.C. §§ 405(g), 1383(c)(3); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). "Substantial evidence is less than a preponderance, but rather such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005); *see also Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)). It is something "more than a mere scintilla." *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987). The Commissioner's factual findings are conclusive when supported by substantial evidence. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). If supported by substantial evidence, the Commissioner's factual findings must be affirmed, even if the record preponderates against the Commissioner's findings. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004); *see also Martin*, 894 F.2d at 1529. Legal standards are reviewed *de novo*. *Moore*, 405 F.3d at 1211.

V.      **Discussion**

   a.   **Substantial Evidence Supports the ALJ's Findings that Plaintiff's Emotional Problems Would Impose No More Than a Moderate Restriction of Functioning**

Plaintiff argues that the ALJ improperly considered his GAF scores in assessing the severity of his mental impairments. (Pl.'s Mem. 4-11). While Plaintiff concedes that the ALJ properly found emotional problems that are severe within the regulatory definition, he takes issue with the ALJ's findings "as to the negative impact of these multiple severe medical problems on [his] ability to

engage in substantial gainful work activity." (Pl.'s Mem. 4) (referencing R. 16). Specifically, Plaintiff contends that the ALJ concluded he had only moderate psychological limitations based on his GAF scores of 50, which is "just one point away from the moderate range of symptoms" in the DSM-IV-TR strictures. (Pl.'s Mem. 4-5).[7]

The Commissioner's regulations do not speak specifically to the inclusion of GAF scores in disability determinations. Instead, the Commissioner noted in a final rules issuance that commenters recommended a discussion of GAF scores in the regulations, but the comment was not adopted. Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed. Reg. 50,746, 50,764-65 (August 21, 2000) (to be codified at 20 C.F.R. pt. 4 & 16). The Commission "did not mention the GAF scale to endorse its use in the Social Security and SSI disability programs," although it recognized that it is routinely used by medical sources. *Id.* Nevertheless, "[i]t does not have a direct correlation to the severity requirements in [the Commission's] mental disorders listings." *Id.*

Turning to case law, the court is unable to find any Eleventh Circuit precedent regarding how an ALJ should treat GAF scores in making a disability decision. Neither Plaintiff nor Defendant have pointed to precedent binding in this Circuit and applicable to this issue, although Plaintiff references

---

[7]A GAF score of 41-50 represents "Serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). A GAF score of 51-60 represents "Moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." DSM-IV-TR 34.

non-binding cases from this district. Therefore, the court first turns to published opinions from other Circuits for guidance.[8]

In an oft-referenced passage, the Sixth Circuit held that "[w]hile a GAF score may be of considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's accuracy. Thus, the ALJ's failure to reference the GAF score in the RFC, standing alone, does not make the RFC inaccurate." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002). The Eighth Circuit quotes the preceding statement and states that, while "the Commissioner has declined to endorse the GAF scale," "GAF scores may still be used to assist the ALJ in assessing the level of a claimant's functioning." *Halverson v. Astrue*, 600 F.3d 922, 930-31 (8th Cir. 2010).

In *Brueggemann v. Barnhart*, 348 F.3d 689, 695 (8th Cir. 2003), the Eighth Circuit found that a GAF score of 50 "reflects serious limitations in the patient's general ability to perform basic tasks of daily life, and the record shows that the VE considered a claimant with a GAF of 50 unable to find any work."  The ALJ's error in that case was not in that area, however.  Rather the ALJ in *Brueggemann* erred by failing to properly account for the substantial medical evidence in the record that supported the claimant's contentions of disability. (*Id*. at 695). Generally, several courts of

---

[8]While circuit courts differ in their approach to assessing social security claimant's GAF scores, this court is concerned with how the Eleventh Circuit might measure an ALJ's assessment of GAF scores. It looks to the decisions of other circuits to determine if those are well-reasoned and fit within the fabric of Eleventh Circuit social security case law.  As discussed below, the court concludes that the question of how our circuit court would decide the issue of how a GAF score should be utilized in formulating the RFC is *not* the key issue here. Rather, this case turns on a review of whether the ALJ's credibility findings are supported by substantial evidence.  If those findings are so supported, it is of no moment how the Eleventh Circuit might answer the nuanced question of law regarding the relationship between a GAF score and an RFC formulation. Here, the court concludes that the ALJ's findings are properly supported. Nevertheless, for purposes of a full and complete analysis, the court analyzes relevant case law on the issue of how a GAF score should relate to formulating an RFC.

appeal (in decisions that are not precedential and/or were not published) have found "that a GAF score of 50 or below is not in and of itself determinative of disability." *Wisner v. Astrue*, 496 F.Supp.2d 1299, 1304 (N.D. Ala. 2007); *see Hillman v. Barnhart*, 48 Fed.Appx. 26 (3d Cir. 2002) (not precedential) (noting that a GAF of 50 would indicate a claimant could perform some substantial gainful activity); *Rutter v. Comm'r of Soc. Sec.*, 91F.3d 144 (Table) (6th Cir. 1996) (unpublished opinion) (exclusive reliance on GAF score not appropriate); *Roemmick v. Shalala*, 59 F.3d 176 (Table) (9th Cir. 1995) (unpublished opinion) (noting that inability to work is only one example of the level of adaptation meriting a GAF of 40); *see also Seymore v. Apfel*, 131 F.3d 152 (Table) (10th Cir. 1997) (unpublished opinion) ("Contrary to claimant's contention, a GAF rating of 45 may indicate problems that do not necessarily relate to the ability to hold a job; thus standing alone without further narrative explanation, the rating of 45 does not evidence an impairment seriously interfering with claimant's ability to work."). *But cf. Lloyd v. Barnhart*, 47 Fed. Appx. 135 (3d Cir. 2002) (not precedential) (noting that a vocational expert at the ALJ hearing testified that a GAF of 50 or lower would indicate claimant would not be able to keep a job).

      In determining how the Eleventh Circuit might analyze an ALJ's application of GAF, the court now turns to two non-binding Eleventh Circuit opinions addressing this issue.[9] The Eleventh Circuit held that when it was "unable to determine from the record what weight the ALJ placed on the GAF score" it is not harmless error and "the ALJ should determine what, if any, weight to place on the score," particularly when it is a score that "reflects severe impairments." *McCloud v. Barnhart*, 166 Fed.Appx. 410, 418 (11th Cir. 2006) (the ALJ erroneously did not specify what weight was placed on claimant's GAF scores of 45 and 48 when determining those scores indicated

---

[9]These two cases are the only two Eleventh Circuit cases involving GAF that the court discovered.

moderate limitations). On the other hand, the Eleventh Circuit did not find error when multiple GAF scores indicated only moderate limitations but were inconsistent with severe limitations outlined in a treating physician's RFC assessment. *Gilabert v. Comm'r of Soc. Sec.*, 396 Fed.Appx. 652, 655 (11th Cir. 2010) (treating physician found claimant's GAF scores for four years to be consistently from high 50s to 60s, yet stated in an RFC questionnaire that claimant was unable to function in the workplace).

With this background in mind, the court will examine the GAF scores in the instant case to see how they influenced the ALJ's findings and Plaintiff's RFC. *See Howard*, 276 F.3d at 241. Because the scores at issue here were all 50 or below, the weight and explanations the ALJ attributed to them will be considered. *See McCloud*, 166 Fed.Appx. at 418. However, the mere fact that the scores were 50 and below does not automatically indicate the presence of disability. *See e.g., Hillman*, 48 Fed.Appx. at 26. To be sure, "standing alone, the GAF score does not evidence an impairment seriously interfering with claimant's ability to work." *Lopez v. Barnhart*, 78 Fed.Appx. 675, 678 (10th Cir. 2003). So long as substantial evidence in the record supports the ALJ's decision to make a finding of no disability, that decision will be affirmed. *See Gilabert*, 396 Fed.Appx. at 655; *Wilson*, 284 F.3d at 1221.

Here, Plaintiff has four different GAF scores in the medical evidence of record: 30 in December 2008, 50 in January 2009, 50 in March 2009, and 50 in January 2010. (R. 251, 296, 286, 404). Regardless of the fact that the most recent GAF scores were consistently 50, after careful review, the court concludes that how the Eleventh Circuit might answer the legal question of how a GAF score should be utilized in formulating the RFC is not the dispositive inquiry here. This is so because the key question is whether substantial evidence supports the ALJ's RFC finding,

11

including the determination that Plaintiff's mental symptoms do not appear to impose more than moderate limitations.[10] (R. 20).

The ALJ determined that Plaintiff lacked credibility in many facets, including his allegations of mental disability. (R. 19-20). For example, a psychological evaluation found that Plaintiff was not putting forth maximum effort (or was not fully cooperating). (R. 321). This same evaluator found Plaintiff's stuttering to be exaggerated which suggested malingering. (*Id.*). Other evidence in the record suggests malingering (or possible misrepresentations) by Plaintiff. (R. 291, 296, 355). A therapist at Eastside Mental Health Center had noted many inconsistencies in the history Plaintiff provided and felt that Plaintiff "is very manipulative." (R. 371).

Moreover, Plaintiff asserted at the hearing that his medications negatively affected his functioning, yet admitted that they helped his mood swings. (R. 102, 104, 370). A review of the record indicates that no changes have been made in Plaintiff's medicine since May 2009, and no side effects have been reported. (R. 312-13). Plaintiff had indicated he stopped working due to disability and partially due to his medications on February 13, 2009, but, while it was not enough to qualify as substantial gainful activity, Plaintiff has work activity after that time. (R. 94, 145-46, 158-62, 221). This clash of evidence weakens Plaintiff's contention that his medicines negatively affect his ability to work.[11]

---

[10]While the ALJ does not explicitly use the word "weight" when stating what weight he attributed to Plaintiff's individual GAF scores, weight is clearly and coherently implied. (R. 19).

[11]Defendant states that the Eleventh Circuit found that where the ALJ had specifically articulated at least three reasons for rejecting the claimant's subjective complaints, the ALJ properly discredited the claimant's testimony. (Def.'s Mem. 11) (citing *Allen v. Sullivan*, 880 F.2d 1200, 1203 (11th Cir. 1989)).

Furthermore, Plaintiff's GAF scores of 50 do not conclusively indicate that Plaintiff would be unable to engage in substantial gainful activity. One of the few examples given to illustrate the limitations for this GAF score is having no friends. DSM-IV-TR 34. However, at his hearing Plaintiff stated that friends are helping him make payments on his house, and his SSI application mentioned that a friend currently lives with him. (R. 98, 154, 368). Another example given for a GAF score of 50 is suicidal ideation, which Plaintiff has exhibited in the past. DSM-IV-TR 34; (R. 248). He has also been unable to keep a job, which is another example. DSM-IV-TR 34.

Plaintiff's contentions on this issue focus on the testimony by Dr. Russell, the vocational expert, at the ALJ hearing, stating that a GAF score of 50 "is the first score that is considered severe, that would preclude work." (R. 118). However, she also stated that "a 50, because it's right on the border, may affect a person in just one area." (*Id.*). A therapist at Eastside Mental Health stated that Plaintiff "makes it difficult to assess the situation because he is lying a lot of the time. He adds dramatic details and embellishments to events that may have really happened, to the point that you have to doubt the whole story. He is very manipulative and seems to have some type of agenda." (R. 355). Therefore, Plaintiff's GAF of 50 might only affect him in one area, or it might affect him in multiple areas. Notwithstanding this question, and in either event, it was permissible for the ALJ to look to other evidence in the record to conclude what a GAF score of 50 indicates in this case.

The ALJ gave proper consideration to Plaintiff's GAF scores in making his findings. Substantial evidence contained in the record—including Plaintiff's lack of credibility on many fronts, reports from medical sources, and Plaintiff's apparent improvement from his medications—led the ALJ to find only moderate mental limitations, and these moderate limitations were accounted for in Plaintiff's RFC. (R. 295). The ALJ engaged in a thorough discussion of how he assessed Plaintiff's

RFC and the reasons for that assessment (R. 18-21), and did not commit reversible error in assessing Plaintiff's GAF scores.

### b. The ALJ Properly Employed the Pain Standard in Assessing Plaintiff's RFC

Plaintiff next contends that the ALJ erroneously assessed his RFC by disregarding any mention of pain, and misapplied the *Holt* pain standard after concluding that he suffered degenerative disc disease of the neck and back. (Pl.'s Mem. 11, R. 16). Plaintiff argues that the Eleventh Circuit, by establishing a pain standard, requires that pain be part of the disability equation and, therefore, the residual functional capacity assessment. (Pl.'s Mem. 12). The court disagrees.

In order to establish a disability based on testimony of pain and other symptoms, a claimant must satisfy two parts of a three-part test. That is, the claimant must show (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain. *Wilson*, 284 F.3d at 1225; *see Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). In determining whether the pain standard is met, the credibility of the claimant's testimony must be considered. *Lamb v. Bowen*, 847 F.2d 698, 702 (11th Cir. 1988). If the ALJ discredits a claimant's subjective testimony, he must articulate explicit and adequate reasons for doing so. *Wilson*, 284 F.3d at 1225; *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995). Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true. *Id.* (referencing *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

It does not follow that because the Eleventh Circuit has a pain standard, the ALJ must include mention of alleged pain in a claimant's RFC. The ALJ is required to apply the pain standard "when a claimant attempts to establish disability through his or her own testimony of pain or other

subjective symptoms." *Foote*, 67 F.3d at 1560. The Eleventh Circuit has consistently reiterated that an ALJ must articulate explicit and adequate reasons for discrediting subjective pain testimony. *See Hale*, 831 F.2d at 1011; *Foote*, 67 F.3d at 1561-62; *Wilson*, 284 F.3d at 1225; *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). Thus, application of the pain standard does not mean that a claimant's RFC must automatically include mention of pain, so long as the ALJ's findings articulate explicit and adequate reasons for discrediting subjective pain testimony. *See Id.*

The court finds that the ALJ properly applied the *Holt* pain standard, and that his findings are supported by substantial evidence. Although Plaintiff's RFC does not mention pain specifically, contrary to Plaintiff's assertions here, the ALJ's findings and discussion indicate that the standard was indeed applied and that the ALJ addressed Plaintiff's allegations of pain. (R. 18-21). The ALJ did not refer to the three-part test, but did cite to 20 C.F.R. § 416.929, "which contains the same language regarding the subjective pain testimony that [the Eleventh Circuit] interpreted when initially establishing its three-part pain standard." *Wilson*, 284 F.3d at 1226 (citing to *Elam v. Railroad Retirement Bd.*, 921 F.2d 1210, 1214-15 (11th Cir. 1991)); (R. 18-19). The ALJ further pointed out that "whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, I must make a finding on the credibility of the statements based on a consideration of the entire case record." (R. 19).

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms, but that his "statements concerning the intensity, persistence and limiting effects of these symptoms" largely lacked credibility. *(Id.)*. As discussed above, evidence suggests Plaintiff might be a malingerer and that medical examiners suspected he might be making misrepresentations to them. (R. 291, 296, 321, 355, 371). Although this evidence does

not relate directly to Plaintiff's physical pain testimony, it could reasonably be viewed as lending suspicion to his credibility in giving that testimony.

According to the ALJ, Plaintiff also did not receive "the type of medical treatment one would expect for one with such allegedly disabling symptoms." (R. 19). Plaintiff did complain of neck and back pain and received an MRI in April 2008, which revealed multilevel degenerative change in the lumbar spine and a right paracentral protrusion at C5-6. (R. 232-35, 244-45). He was followed by the UAB Pain Clinic. (R. 102, 250). However, his next doctor visit, dated May 9, 2008, was for abdominal pain with no mention of neck or back pain. (R. 236-37). In July 2008, Plaintiff was admitted to Sentara Leigh Hospital in Norfolk, Virginia, with abdominal pain again being his primary complaint. While he did report joint pain with tenderness during a musculoskeletal physical examination, the examiner found a normal range of motion in his neck and on discharge his pain assessment was 5/10. (R. 376-97, 381, 384-85).

Plaintiff was admitted to Trinity Medical Center in December 2008, with a chief complaint of chest pain, blackouts, and fever. (R. 261-65). A physical examination conducted during this visit found that the neck appeared normal and had no boney tenderness, while the spine was non-tender. (R. 270). Plaintiff was next treated at Citizens Baptist Medical Center in March 2009, and the records specifically state, "Patient denies any head or neck pain," and no complaints or indications of back pain were presented. (R. 303). More tellingly, Plaintiff did not allege any neck or back pain as part of his disabling condition during his June 2009 consultative examination. (R. 318-22).

Furthermore, Plaintiff takes no narcotic-based pain relieving medicines, and performs daily activities such as driving, housework, and yard work. (R. 97-98, 108, 182-83, 188). At his hearing, Plaintiff stated that if he sometimes turns his head a certain way, his body locks down and a pain

shoots down his spine. (R. 106-07). However, his ability to drive appears to conflict with this statement.

There is also sufficient evidence supporting the ALJ's discrediting of Plaintiff's claims of disabling pain. The MRI records are underlying medical evidence, but they only satisfy step one of the pain standard. Plaintiff's medical history and lack of credibility are each a sufficient basis for the ALJ to have concluded that neither of the other two requisite steps were satisfied. Objective medical evidence does not confirm the alleged severity of the pain: there is only one medical record focusing on neck and back pain. (R. 232-35, 244-45). Additionally, an objectively determined medical condition cannot reasonably be expected to give rise to the claimed pain since Plaintiff's credibility as to his testimony of pain symptoms is in doubt. Therefore, substantial evidence supports the ALJ's decision to discredit Plaintiff's testimony on pain symptoms, thus disregarding an inclusion of pain itself in Plaintiff's RFC.[12] The ALJ did not commit reversible error in his application of the pain standard.

## VI.  Conclusion

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and proper legal standards were applied in reaching this determination. The Commissioner's final decision is therefore due to be affirmed, and a separate order in accordance with this memorandum of decision will be entered.

---

[12]Plaintiff relies on the vocational expert's statements that pain of the magnitude Plaintiff alleged would preclude his ability to work 8-hours per day, 40 hours per week. (Pl.'s Mem. 12). The vocational expert was not in the same position as the ALJ to review and judge the entire record and make a determination as to the *credibility* of Plaintiff's alleged pain symptoms.

**DONE** and **ORDERED** this  6th  day of September, 2012.

                                                **R. DAVID PROCTOR**
                                                UNITED STATES DISTRICT JUDGE